David **WOODZICKA** and Jason Nelson, Plaintiffs,

and

Richard L. **Sonntag**, Administrator and Fiduciary of the Wisconsin Evangelical Lutheran Synod, Verga Group Health Care Plan, Plaintiff–Intervenor,

v.

**ARTIFEX LIMITED**, Defendant.

No. 94–C–1379.

United States District Court, E.D. Wisconsin.

Nov. 6, 1998.

---

Ronald S. Golsder, Zimmerman Reed, Minneapolis, MN; for David Woodzicka, Jason Nelson.

Richard P. Carr, Reinhart Boerner Van Deuren, Norris & Rieselbach, Milwaukee, WI, for Richard L. Sonntag.

Timothy J. Strattner, Schellinger & Doyle, Brookfield, WI, Russell J. Ober, Jr., Meyer, Unkovic & Scott, Pittsburgh, PA, for Artifex Ltd.

**DECISION AND ORDER RE: PLAINTIFFS' RULE 41(a)(2) MOTION FOR VOLUNTARY DISMISSAL**

CALLAHAN, United States Magistrate Judge.

### Background

This action was commenced on December 19, 1994, when the plaintiffs, David Woodzicka ("Woodzicka") and Jason Nelson ("Nelson"), filed a complaint in this district asserting a host of claims against the defendant, Artifex Limited ("Artifex"). The plaintiffs' claims stem from each of them having allegedly incurred damages from the spinal fixa-

tion systems utilizing pedicle screws, which were implanted posteriorly into the vertebrae of their spines. Their complaint against Artifex was transferred to the United States District Court for the Eastern District of Pennsylvania to be made a part of the multi-district litigation proceedings captioned **In Re: Orthopaedic Bone Screw Products Liability Litigation,** MDL 1014, the Honorable Louis Bechtle presiding. Eventually, on July 30, 1997, this action was remanded to this district after the Judicial Panel on Multi-district Litigation had determined that coordinated or consolidated pretrial proceedings in it had been completed and that, therefore, remand as provided in 28 U.S.C. § 1407(a) was appropriate. After having been originally assigned to several other judges in this district, this action eventually found its way to this court's docket on February 13, 1998. On April 3, 1998, and then again on May 1, 1998, scheduling conferences were conducted. On May 1, 1998, dates for the exchange of expert reports and for the cut-off of all case specific discovery were set. A trial date of December 7, 1998, was also set.

Thereafter, several discovery skirmishes arose and were addressed by the court. Additionally, the defendant filed, inter alia, several motions for summary judgment. Specifically, on June 29, 1998, Artifex filed a motion for partial summary judgment "with respect to all issues relating to the alleged failure by Artifex to obtain pre-market approval of its products from the Food and Drug Administration ('FDA') and its alleged failure to comply with the FDA's reporting requirements on the ground that the products upon which plaintiffs [based] their causes of action were custom made, and therefore expressly exempted from the FDA pre-market approval and reporting requirements ... [and that therefore] lack of FDA approval or compliance with FDA reporting requirements [could not] provide a basis for imposition of liability on Artifex." (Defendant's June 29, 1998, Motion for Partial Summary Judgment). The plaintiffs filed submissions in opposition to this motion and, with the filing of Artifex's reply submissions on August 12, 1998, this particular motion was fully briefed and ready for resolution.

Thereafter, on September 8, 1998, Artifex filed another motion for summary judgment. In that motion "Artifex seeks summary judgment on Plaintiffs' claims for strict liability (Count I), negligence (Count II), implied and express warranty (Count III), fraud (Count IV), violation of Wisconsin statute § 100.18 (Count V), intentional concealment (Count VI), and negligent infliction of emotional distress (Count VII)." (Defendant's September 8, 1998, Motion for Summary Judgment). As stated by Artifex in its September 8, 1998, brief:

> Throughout the Complaint are allegations that Artifex failed to obtain FDA approval for its devices, misrepresented the FDA's status of its devices and concealed information from the FDA. These allegations are the subject of a pending Motion Partial Summary Judgment filed by Artifex ... The basis for that Motion is Artifex's contention that the devices implanted into Messrs. Woodzicka and Nelson's spines were each custom made. As such, those devices are expressly exempt from any FDA premarket approval and reporting requirements pursuant to § 360j(b) of the Medical Device Amendment of 1976 ("MDA"), 21 U.S.C. § 360c, et seq. Therefore, lack of FDA approval cannot form the basis for the imposition of liability on Artifex. Further, Artifex is entitled to summary judgment on all claims involving alleged misrepresentations to the FDA and/or alleged violations of the MDA, because the MDA does not provide a private right of action. Finally, the Custom Made Motion noted that plaintiffs' claims failed to meet the standard for legal causation. Artifex now moves for summary judgment on the plaintiffs' remaining claims on the basis that such claims are barred by the applicable statute of limitations. In addition, certain claims are barred by reason of the dismissal of such causes of action in the Multidistrict Litigation proceeding known as In Re Orthopaedic Bone Screw Product Liability Litigation, MDL Docket No. 1014. Finally, certain of plaintiffs' causes of action have necessary elements that cannot proven by plaintiffs.

Id. at pp. 2–3.

Thus, with the filing of this particular motion for summary judgment, all of the plain-

tiffs' claims became targets of motions for summary judgment.

The plaintiffs' materials in response to Artifex's September 8, 1998, motion for summary judgment were due to be filed 30 days thereafter, i.e., on October 8, 1998. No such materials were filed. Instead, on October 8, 1998, the plaintiffs filed a motion for voluntary dismissal, without prejudice and without costs, pursuant to Rule 41(a)(2), Fed.R.Civ.P. The grounds given for such motion are as follows:

> Given developments in a recent trial in this District involving the same Defendant, Case No. 0533, Plaintiffs make this Motion, having reached the conclusion following that trial, that plaintiffs are not likely to be successful in this case.

(Plaintiffs' Rule 41 Motion for Voluntary Dismissal).

In timely fashion, Artifex filed a "Memorandum in Partial Opposition to Plaintiffs' Motion for Voluntary Dismissal," arguing that the plaintiffs' motion for voluntary dismissal should be denied to the extent that it requests dismissal without either prejudice or costs. Instead, Artifex argues that this court should dismiss the action with prejudice, and should assess costs. On October 30, 1998, the plaintiffs filed their reply in support of their motion for voluntary dismissal. Thus, the plaintiffs' motion for voluntary dismissal is fully briefed and ready for resolution.

Venue is proper under 28 U.S.C. § 1391. The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and Local Rule 13.05(a). Jurisdiction is based on 28 U.S.C. § 1332, diversity of citizenship and an amount in controversy exceeding $50,000.00.[1] For the reasons which follow, the plaintiffs' motion for voluntary dismissal will be granted in part and denied in part, if, as explained below, the plaintiffs do not withdraw said motion on or before November 20, 1998, at 5:00 p.m.

**Analysis**

Rule 41(a)(2), Fed.R.Civ.P., provides, in pertinent part:

> ... Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper ... Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

A stated previously, the plaintiffs seek an order dismissing this action without prejudice and without costs (in other words, with no consequences to them, as if the action had never been filed) because, based on "recent developments and evidentiary rulings on the issues of custom made devices and other matters in a recent case in this District with a similar albeit different Artifex device", they believe they will not be able to prove their case. Stated another way, "there will not be sufficient evidence to meet [their] evidentiary burden." (Plaintiffs' Initial Memorandum, p. 2).

The defendant does not oppose the plaintiffs' motion for voluntary dismissal. It argues, however, that the court's order of dismissal should be with prejudice and on condition that the defendant be awarded its "taxable costs." In support of its position, Artifex presents that the "recent developments" to which the plaintiffs refer are, in fact, not recent at all. To the contrary, Artifex argues that the "recent developments" involve "issues of which plaintiffs' counsel has been aware for years." (Defendant's Brief, p. 3). (Notably, however, Artifex does not dispute that the evidentiary rulings to which the plaintiffs refer are of recent vintage). And, Artifex argues that because it would be entitled to its taxable costs were this action to be tried to verdict, it should be granted those taxable costs in the event this court were to grant the plaintiffs' motion to voluntarily dismiss

---

1. After the complaint was filed, the amount in controversy requirement was raised to $75,000.00. However, this does not impact jurisdiction because the amendment was not retroactive. See, 28 U.S.C. § 1332(a) and Statutory and Historical Notes (1996 Acts § 205(b) of Pub.L. 104–

317); *TJS Brokerage & Co. v. CRST, Inc.,* 958 F.Supp. 220 (E.D.Pa.1997) (noting that raising the amount in controversy requirement from $50,000 to $75,000 did not take effect until 90 days after October 19, 1996, the date of enactment).

precisely because "either way it is the prevailing party." *Id.*

The plaintiffs reply to Artifex's arguments by stating:

> The real issue in this case is whether the dismissal should be with prejudice or without prejudice. Plaintiffs certainly have no interest in paying for defense costs. Here, the issue becomes whether Plaintiffs should have the right to assert personal injury claims—in the future—if their pedicle screw devices cause them future injury. It has been the defense claim that the device has not to-date caused these Plaintiffs' injuries. Assuming that to be true, the question becomes whether a dismissal with prejudice of claims to-date would bar any future claims. Plaintiffs would acquiesce in a dismissal of prejudice of claims to-date, if it were clear that any new injuries, if any, were not barred by such a dismissal.
>
> For these reasons, Defendant's claims of costs should be denied. Plaintiff (sic) prefers a dismissal without prejudice, but would agree to a dismissal with prejudice of any injury claims, if any, to-date.

(Plaintiffs' Reply, pp. 2–3).

As a general proposition, at a plaintiff's request, a case may be voluntarily dismissed by order of court and the court may impose any terms or conditions that it deems proper for the protection of the defendant's interests. *Moser v. Universal Engineering Corp.*, 11 F.3d 720, 723 (7th Cir.1993). Stated another way, the language of Rule 41(a)(2) provides that allowing the plaintiff to take a voluntary dismissal may be conditioned upon the plaintiff fulfilling whatever terms and conditions the district court, in its discretion, deems necessary to offset the possible prejudice that the defendant may otherwise suffer from the plaintiff dismissing his complaint without prejudice. *Marlow v. Winston & Strawn*, 19 F.3d 300, 303 (7th Cir.1994). Among the permissible terms upon which the court may condition an order of dismissal is that the dismissal be with prejudice. *Id.* at 304. Such terms and conditions may also include payment of costs and/or attorney's fees, *Brown v. Local 58, International Brotherhood of Electrical Workers*, 76 F.3d 762,

766–67 (6th Cir.1996); *Westlands Water District v. United States*, 100 F.3d 94 (9th Cir. 1996), although such costs cannot include those expenses for items that will be useful in another action or that were incurred unnecessarily. 9 Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 2366, p. 308. The district court may also condition dismissal on the plaintiff's agreement not to assert certain claims in another action. *Id.* at pp. 312–14.

In deciding whether a dismissal under Rule 41(a)(2) should be with or without prejudice, a court may wish to consider several factors. The factors include: "the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and the fact that a motion for summary judgment has been filed by the defendant." *Pace v. Southern Express Co.*, 409 F.2d 331, 334 (7th Cir.1969); see also, *Federal Deposit Insurance Corp. v. Knostman*, 966 F.2d 1133, 1142 (7th Cir. 1992). But, the enumeration in *Pace* of the factors to be considered is not equivalent to a mandate that each and every factor be resolved in favor of the moving party before dismissal is appropriate. *Tyco Laboratories, Inc. v. Koppers Company, Inc.*, 627 F.2d 54, 56 (7th Cir.1980). It is rather simply a guide for the trial judge, in whom the discretion ultimately rests. *Id.* And, "[i]n exercising its discretion the court follows the traditional principle that dismissal should be allowed unless the defendant will suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Stern v. Barnett*, 452 F.2d 211 (7th Cir.1971), citing, 2B Barron and Holtzoff, Federal Practice and Procedure, § 912, at 114. Moreover, if after considering the *Pace* factors, a court decides to grant the plaintiff's motion for voluntary dismissal, but with prejudice, or with other conditions, the plaintiff must be given a reasonable opportunity to withdraw his motion if he finds those conditions unacceptable. *Marlow*, 19 F.3d at 304–05.

The scenario presented in the instant action is not the typical one. To begin with,

shortly after this action was filed, the plaintiffs' complaint was ordered transferred to the United States District Court for the Eastern District of Pennsylvania for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. Its pretrial processing was then governed by Judge Louis Bechtle, who entered numerous orders governing the processing of all actions that had been transferred to him, including this one. Judge Bechtle oversaw such matters as "generic" discovery, which was to be applicable to all transferred cases. Finally, when Judge Bechtle had concluded that the instant action was ready for trial (except for perhaps some limited case specific discovery or motion practice), he remanded it to this district for expeditious trial.

But the instant action is not the only one in this district that had been handled in the manner described above. There were others. Among those others was *Staudt v. Artifex, Ltd.*, 16 F.Supp.2d 1023 (E.D.Wis.1998). After *Staudt* had been remanded to this district, Senior Judge Myron L. Gordon issued various pretrial rulings, including, on August 10, 1998, an order granting, in part, Artifex's motion for summary judgment dismissing some of the plaintiff's claims. Those claims which survived Judge Gordon's August 10, 1998, order thereafter proceeded to jury trial commencing on September 8, 1998. On September 21, 1998, after the jury advised the court that it could not reach a verdict, a mistrial was declared. It is apparently the various rulings and developments in Staudt that caused the plaintiffs in the instant action to conclude that "there will not be sufficient evidence to meet [their] evidentiary burden."

In other words, this is not a situation where the individual plaintiffs in this action single-handedly forced the defendant to hire a lawyer and undertake steps to defend the claims asserted in their complaint. Rather, the plaintiffs in this action are just two of a host of similarly situated plaintiffs in cases filed throughout the United States against this defendant, as well as other defendants, claiming injuries from pedicle screw spinal implants.

This is important to keep in mind when considering the *Pace* factors in deciding whether this action should be dismissed without prejudice, as plaintiffs seek, or with prejudice, as defendant seeks. *Pace* instructs that "the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal and the fact that a motion for summary judgment has been filed by the defendant" are all factors the court may consider in deciding that issue. Dismissal without prejudice should, however, be allowed unless the defendant will suffer some plain legal prejudice other than the mere prospect of a second lawsuit. *Stern, supra.*

Artifex does not here argue that the plaintiffs are guilty of excessive delay and lack of diligence. Nor, in my view, could they successfully argue such points. As stated previously, this action was remanded to this district on July 30, 1997. After having been originally assigned to several other judges in this district, this action eventually found its way to my docket on February 13, 1998. Thereafter, on April 3, 1998, and then again on May 1, 1998, I conducted scheduling conferences with the parties. On May 1, 1998, dates for the exchange of experts, the cut-off of case specific discovery, the filing of dispositive motions, the final pretrial and trial were set. Aside from several skirmishes over discovery issues, this action proceeded without any major hitch, with the parties and the court expecting the matter to be tried during this calendar year, on December 7, 1998.

To be sure, the defendant has undertaken effort and expense in preparing this action for trial. But, much of that effort and expense was taken in defense of all of the cases coordinated by Judge Bechtle, not just this one. Indeed, it was only after my May 1, 1998, scheduling order was entered that Artifex was forced to focus its attention on this particular action to get it ready for trial.

Turning then to the next *Pace* factor, this is not a situation where the plaintiffs have given an insufficient explanation for the need to take a dismissal. To the contrary, they have presented that, given the rulings in another case, *Staudt* (16 F.Supp.2d 1023),

they do not believe they can sustain their burden of proof. That is explanation enough.

The last of the *Pace* factors, however, is one that weighs slightly against the plaintiffs. Indeed, it was not until after the defendant filed its September 8, 1998, motion for summary judgment that the plaintiffs filed the instant motion for voluntary dismissal. Yet, my observation that this particular *Pace* factor weighs against the plaintiffs must be tempered with the observation that it may not have been until September 21, 1998, when a mistrial was declared in *Staudt*, that the plaintiffs came to the conclusion that they could not meet their burden in the instant action. After all, Artifex's "clean up" motion for summary judgment was filed on September 8, 1998. Under this court's local rules, the plaintiffs' materials in response to that motion were due to be filed 30 days thereafter. In the interim, the *Staudt* hung jury came to pass.

And so, in my view, consideration of the *Pace* factors does not clearly weigh in favor of dismissal with prejudice. Having said that, however, it seems a bit unfair for the defendant to have undertaken preparation of a motion for summary judgment that, at least in part, challenges the plaintiffs' claims on the basis of the running of the applicable statute of limitations, only to be met with a motion for those same claims to be dismissed without prejudice. To grant the plaintiffs' motion would leave the defendant's motion unresolved and, more significantly, leave the defendant subject to a second lawsuit on the same claims. On the other hand, were the plaintiffs to refile these same claims, the defendant would have a motion for summary judgment at the ready, which could be filed the day after the defendant was served with plaintiffs' complaint.

In any event, dismissal without prejudice is to be allowed unless the defendant will suffer same plain legal prejudice other than the mere prospect of a second lawsuit. *Stern, supra.* Such being the case, the fact that the defendant might be forced to refile

its motion for summary judgment challenging the plaintiffs' claims on the ground of the expiration of the statute of limitations should not, in and of itself, stand in the way of the court's granting the plaintiffs' motion for voluntary dismissal, without prejudice.

■ The question of taxable costs, however, is another matter. Dismissals without prejudice are usually granted only if the plaintiff pays expenses incurred by the defendant in defending the suit up to that point. *Babcock v. McDaniel,* 148 F.3d 797, 799 (7th Cir.1998); *Marlow,* 19 F.3d at 303. Payment of the defendant's costs serves "to offset the possible prejudice defendant may otherwise suffer from plaintiff dismissing his complaint without prejudice." *Marlow,* 19 F.3d at 303.

■ In this action, the defendant seeks its taxable costs as a term or condition of the dismissal of the plaintiffs' claims. In my opinion, the defendant's request is reasonable. After all, were this matter to proceed to trial and Artifex were to prevail (as it no doubt would seeing as the plaintiffs have conceded that they cannot meet their evidentiary burden), it would be entitled to taxable costs. And the Seventh Circuit has stated that a dismissal without prejudice and relief from costs is an unusual and unrealistic combination. *Babcock,* 148 F.3d at 799. Accordingly, as the quid pro quo of the dismissal of this action without prejudice, the plaintiffs, Woodzicka and Nelson,[2] will be ordered to pay Artifex the taxable costs it incurred in defending this action up to this point.

To be more specific, as stated previously, much of the taxable costs incurred by the defendant have undoubtedly been incurred in defending the host of actions filed against it throughout the country, presumably all of which were consolidated or coordinated by Judge Bechtle. It is not my intention to order the plaintiffs to pay Artifex those taxable costs incurred in "generically" defending the aforedescribed multitude of actions. Rather, it is only those taxable costs that are attributable to Artifex's defending **this particular action** that the plaintiffs are being

---

2. On March 31, 1998, Richard Sonntag ("Sonntag"), Administrator and Fiduciary of the Wisconsin Evangelical Lutheran Synod, Verga Group Health Care Plan, was granted leave to intervene in this action, as a subrogated party. Sonntag is not being ordered to pay taxable costs. It is only Woodzicka and Nelson who are being ordered to do so.

ordered to pay, as a condition of this action being dismissed, without prejudice.

As a final matter, it is settled that a plaintiff has an option not to go forward with a motion for voluntary dismissal if the conditions specified by the court seem too onerous. 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 2366, p. 316. Thus, the plaintiffs shall have until 5:00 p.m. on November 20, 1998, to withdraw their motion for voluntary dismissal in the event they find unacceptable the terms and conditions of the court's granting their motion for voluntary dismissal, without prejudice. If they have not withdrawn their motion by that date, the following order will become effective on November 23, 1998:

**NOW, THEREFORE, IT IS ORDERED** that the plaintiffs' motion to dismiss this action without prejudice and without costs is **GRANTED IN PART AND DENIED IN PART;**

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED, WITHOUT PREJUDICE;**

**IT IS FURTHER ORDERED** that as the quid pro quo of the dismissal of this action, without prejudice, plaintiffs Woodzicka and Nelson are ordered to pay the defendant's taxable costs incurred in defending this particular action;

**IT IS FURTHER ORDERED** that the defendant's currently pending motion for partial summary judgment and motion for summary judgment be and hereby are **DENIED, WITHOUT PREJUDICE;**

**IT IS FURTHER ORDERED** that the defendant's currently pending motion in limine be and hereby is **DENIED, WITHOUT PREJUDICE.**

**SO ORDERED.**